[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14926
Non-Argument Calendar

_____

D.C. Docket No. 8:14-cr-00496-EAK-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT WILLIAM BARTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 4, 2020)

Before LAGOA, BRASHER and MARCUS, Circuit Judges.

PER CURIAM:

Robert Barton, a federal inmate proceeding pro se, appeals the denial of his

motion for a new trial based on newly discovered evidence consisting of a 2017

DNA guidelines publication issued by the Scientific Working Group on DNA

Analysis Methods ("2017 SWGDAM Guidelines") that was not available at the time of his trial, when he was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Barton argues that: (1) the 2017 SWGDAM Guidelines would render DNA evidence and expert testimony elicited by the government at trial unreliable and inadmissible; and (2) the additional trial testimony offered by the government was incredible and, absent the DNA evidence, a jury would not have convicted him. After thorough review, we affirm.

We review a district court's denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. United States v. Barsoum, 763 F.3d 1321, 1341 (11th Cir. 2014). Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33(b) authorizes a district court to grant a new trial based on new evidence only if: (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial probably would produce a different result. United States v. Barton, 909 F.3d 1323, 1337 (11th Cir. 2018). A failure to meet any one of these elements is fatal to a motion for a new trial based on newly discovered evidence. United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995).

2

These kinds of motions are highly disfavored, and district courts should use great caution in granting them. Barton, 909 F.3d at 1337.

We review the application of the law-of-the-case doctrine de novo. United States v. Green, 764 F.3d 1352, 1355 (11th Cir. 2014). The law-of-the-case doctrine is a self-imposed practice that "operates to create efficiency, finality and obedience within the judicial system." United States v. Anderson, 772 F.3d 662, 668 (11th Cir. 2014) (quotations omitted). Under the doctrine, a decision by this Court "binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal." Id. (quotations omitted); see Green, 764 F.3d at 1357. The law-of-the-case doctrine encompasses our prior factual findings and conclusions of law. Anderson, 772 F.3d at 668. Limited exceptions to the doctrine include new evidence or an intervening change in controlling law that commands a different result, or a decision by this Court that is clearly erroneous and would cause manifest injustice. Id. at 668–69.

A district court's denial of an evidentiary hearing is reviewed for abuse of discretion. See Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (28 U.S.C. § 2255 proceeding). Generally, the district court should conduct an evidentiary hearing before deciding a motion for a new trial. United States v. Culliver, 17 F.3d 349, 350–51 (11th Cir. 1994). However, it is "well established" in this Circuit that a district court may generally decide a motion for a new trial upon

3

affidavits without an evidentiary hearing. United States v. Hamilton, 559 F.2d 1370, 1373 (5th Cir. 1977).[1] Indeed, a district court has the discretion to deny an evidentiary hearing on a motion for a new trial if "the acumen gained by a trial judge over the course of the proceedings makes her well qualified to rule on the basis of affidavits without a hearing." United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997) (quotations and brackets omitted).

Burton previously appeared, on direct appeal from his firearm-possession conviction, in this Court, arguing that the district court had abused its discretion under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), by admitting expert testimony concerning DNA evidence linking Barton to the firearm. See Barton, 909 F.3d 1323. There, we held that, pursuant to Federal Rule of Evidence 702, the district court had fairly determined that the opinions of the government's expert, Candy Zuleger, M.S., were based on reliable methods and a sufficiently reliable application of those methods under Daubert. Id. at 1332. We explained that the district court had not abused its discretion in admitting the DNA evidence because the magistrate judge (1) carefully considered each of Barton's arguments against the reliability of Zuleger's testimony and found her opinion to be reliable based on the methods and procedures employed; (2) was entitled to find

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

accreditation and auditing processes probative of reliability; and (3) properly acted as the "gatekeeper" by not finding Barton's expert more credible than Zuleger, since that determination was for the jury. Id. at 1332–34.

In addition, we declined to consider Barton's submission, on appeal, of the 2017 SWGDAM Guidelines as additional evidence potentially probative of the reliability of Zuleger's methodology because the evidence was not part of the record on appeal and had not been presented to the district court in the first instance. Id. at 1334–35. We noted, however, that the 2017 SWGDAM Guidelines modifying scientific standards for validation standards were potentially important evidence cutting against reliability. Id. at 1334. We, therefore, observed that the best remedy for Barton to offer new scientific evidence that cast doubt on the reliability of forensic evidence used to establish his guilt would be to seek a new trial under Fed. R. Crim. P. 33, based on newly discovered evidence. Id. at 1336–37.

Nevertheless, we ultimately concluded that any error in admitting the DNA evidence was harmless because, while the DNA evidence was powerful and potentially highly prejudicial, the other evidence was "overwhelming" and "painted a powerful picture of Barton's guilt." Id. at 1337–39. In discussing the other evidence, we detailed that Barton was driving the car in which the gun was found, he had confessed twice, once to police at the scene and later to a jailhouse informant, and the testimony of Lisa Moore, his passenger, implicated him and was consistent

5

with Barton's story. Id. at 1338. We found it "clear that sufficient evidence uninfected by any conceivable error in admitting the DNA testimony supports Barton's conviction." Id. We also said that the district court properly instructed the jury on weighing expert testimony, so there was "no reasonable likelihood that the claimed error affected [Barton's] substantial rights." Id. at 1337–39.

In the instant appeal, we likewise conclude that the district court did not abuse its discretion, this time when it denied Barton's motion for a new trial based on newly discovered evidence. For starters, it is the law of the case that any error in the admission of the DNA evidence was harmless, and, as a result, there is no reasonable probability that exclusion of the DNA evidence based on the admission of the 2017 SWGDAM Guidelines would produce a different outcome at a new trial. Barton, 909 F.3d at 1337; Anderson, 772 F.3d at 668. As for Barton's claim that a jury probably would not have convicted him without the DNA evidence, our Court gave the whole record extensive consideration on direct appeal and found the non-DNA evidence to be "overwhelming" and "paint[] a powerful picture of Barton's guilt." Barton, 909 F.3d at 1338. In other words, we said it was "clear that sufficient evidence uninfected by any conceivable error in admitting the DNA testimony support[ed] Barton's conviction" and there was "no reasonable likelihood that the claimed error affected [Barton's] substantial rights." Id. at 1338–39.

6

We recognize that there is an exception to the law-of-the-case doctrine for newly discovered evidence found in Rule 33(b), which requires, among other things, that the evidence is the kind that probably would produce a different result at a new trial. Id. at 1337. Nevertheless, that exception does not apply here because we've already concluded that the potential impact of the new evidence -- exclusion of the DNA evidence -- would not have changed the result of the trial. Thus, because we already have addressed issues concerning the DNA evidence on direct appeal and concluded that any alleged error in its admission was harmless, the district court was bound by our prior decision. Anderson, 772 F.3d at 668; Green, 764 F.3d at 1357. Accordingly, Barton cannot satisfy all the prongs of the Rule 33 exception to the law-of-the-case doctrine. Barton, 909 F.3d at 1337–39; Lee, 68 F.3d at 1274.

To the extent our Court said on direct appeal that the 2017 SWGDAM Guidelines may be probative of reliability, the Guidelines themselves indicate that they would be merely impeaching here. See Barton, 909 F.3d at 1334, 1337. On their face, the 2017 SWGDAM Guidelines make clear that they did not create minimum standards for DNA analysis. Further, the Guidelines expressly provide that they did not intend to "invalidate or call into question" work performed prior to the 2017 revision, which would include the DNA analysis and validation used for Barton's trial. In addition, Zuleger testified that her laboratory adhered to the FBI Quality Audit Standards, which the Guidelines themselves say have precedence over

7

the 2017 SWGDAM Guidelines.  As Barton correctly notes, the 2017 SWGDAM Guidelines could be used as impeachment evidence through which he could attempt to discredit the DNA evidence and Zuleger's expert testimony.  However, a new trial may not be awarded based on new evidence that is merely impeaching.  Id. at 1337. In any event, it is unnecessary for us to decide whether the district court correctly determined that the Guidelines would be merely impeaching here because the law-of-the-case doctrine dictates that Barton could not show that their admission would make a difference at his trial.

Finally, the district court was within its discretion to deny an evidentiary hearing. Martin, 949 F.3d at 670. The district court presided over the entirety of Barton's proceedings, and the acumen gained throughout the proceedings made it well qualified to rule on the motion without a hearing.  Schlei, 122 F.3d at 994; see Hamilton, 559 F.2d at 1373.  Moreover, our holding on direct appeal that any error pertaining to the DNA evidence was harmless permitted the district court to decline a hearing because exclusion of the DNA evidence at a new trial would not have changed the outcome. Barton, 909 F.3d at 1337–38.

Accordingly, the district court did not abuse its discretion, and we affirm.

**AFFIRMED**.

8